# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| Jennifer Patricia Staton, | Case No. 2:20-cv-01940-DJA |
| Plaintiff, | |
| v. | **Order** |
| Kilolo Kijakazi[1], Commissioner of Social Security, | |
| Defendant. | |

Before the Court is Plaintiff Jennifer Patricia Staton's motion for reversal or remand (ECF No. 28) and the Commissioner's cross motion to affirm (ECF No. 31). Plaintiff did not file a reply. Because the Court finds that the ALJ's decision is supported by substantial evidence, it denies Plaintiff's motion to remand (ECF No. 28) and grants the Commissioner's cross motion to affirm (ECF No. 31). The Court finds these matters properly resolved without a hearing. LR 78-1.

I.     **Background.**

    *A.     Procedural history.*

Plaintiff filed applications for Social Security Disability benefits and Supplemental Security Income benefits on August 30, 2017, alleging an onset of disability commencing January 1, 2015. (ECF No. 28 at 2). The Commissioner denied her claims and Plaintiff requested a hearing by an Administrative Law Judge. (*Id.*). The ALJ issued an unfavorable decision on March 26, 2020. (*Id.*). Plaintiff requested review by the Appeals Council, which request the Appeals Council denied on August 17, 2020, making the ALJ's decision the final agency decision. (*Id.*).

---

[1] Kilolo Kijakazi is now the Commissioner of Social Security and substituted as a party.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.      *The ALJ decision.***

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§404.1520, 416.920.  (AR 15-29).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2015.  (AR 18).  At step two, the ALJ found that Plaintiff has the following severe impairments: obesity; lipedema/lymphedema; degenerative joint disease of the bilateral knees; major depressive disorder; generalized anxiety disorder; attention deficit hyperactivity disorder; and posttraumatic stress disorder.  (AR 18).  At step three, the ALJ found that the Plaintiff's impairments or combination of impairment did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 19).  In making this finding, the ALJ considered Listings 1.02, 1.00B2b, 1.00B2c, 4.11, 12.04, 12.06, 12.11, 12.15.  (AR 19).

At step four, the ALJ found that Plaintiff has a residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) subject to limitations.  (AR 21).  Those limitations include that Plaintiff can "occasionally utilize ramps and stairs, stoop, kneel, crouch, and crawl, but never utilize ladders, ropes or scaffolds.  She can occasionally work around heavy machinery with fast moving part[s], but never work at unprotected heights.  The claimant can perform simple or detailed tasks for two-hour increments.  She can occasionally have public contact of a superficial nature.  She cannot perform teamwork-related tasks."  (AR 21).  At step five, the ALJ found Plaintiff incapable of performing any past relevant work but that she could perform occupations such as mail clerk, sorter, and office helper.  (AR 27-29).  Accordingly, the ALJ found that Plaintiff had not been disabled from January 1, 2015 through the date of the decision.  (AR 35).

1        1.      The ALJ's decision regarding Plaintiff's physical limitations.

2        In making her determination of disability, the ALJ found Plaintiff's nurse practitioner[2]

3    Annie Mathew's opinion unpersuasive.  (AR 26).  Mathew and Tracy Haller—Plaintiff's

4    lymphatic occupational therapist—opined that Plaintiff

5              could lift no more than 10 pounds, sit for no more than three hours,
             stand and/or walk for less than one hour, would need to elevate her
6              legs while sitting, that her symptoms would frequently interfere with
             her ability to attend and concentrate at work, would need multiple
7              unscheduled work breaks lasting at least 10 minutes each, and would
             be absent for more than three time[s] a month.
8

9        (AR 26).  The ALJ noted that the assessment was not supported by Mathew's and Haller's

10   records showing

11             generally good response to treatment…[Plaintiff's] subjective
             reports to them that she can maintain her self care, cook, and drive
12             independently…[and] consistent clinical notations of the claimant
             ambulating with normal gait, balance, and coordination despite
13             having significant elevated BMI levels and experiencing edema in
             her lower extremities, as well as the claimant's testimony regarding
14             her improved lymphedema due to ablation therapy.

15

16       (AR 26).  To the contrary, the ALJ found state agency consulting physician Dr. H. Pham's

17   opinion that Plaintiff could perform "light [work] with occasional postural activities except

18   unlimited balancing but no climbing of ladders, ropes, or scaffolds, as well as with avoidance of

19   concentrated exposure to workplace hazards," persuasive.  (AR 25).  The ALJ pointed out that Dr.

20   Pham's opinion was consistent with Plaintiff's weight loss; clinical notations of normal gait,

21   balance, coordination, musculoskeletal and neurological functioning; and ability to work, take

22   care of her parents, and maintain the activities of daily living.  (AR 25-26).

23

24

25   ────────────────────

26   [2] Both Plaintiff and the ALJ referred to Annie Mathew as a physician.  However, the
     Commissioner points out that the record indicates that Mathew is a nurse practitioner affiliated
27   with Absolute Primary Care Center, which lists her as a nurse practitioner on its website.  (ECF
     No. 31 at 2 n.2).  Plaintiff did not reply to this contention.  However, the distinction is not
28   relevant to the Court's analysis.  The Court refers to Annie Mathew by her last name throughout.

2.      The ALJ's decision regarding Plaintiff's mental limitations.

The ALJ found Psychologist Dr. Greg Harder's opinion unpersuasive.  He opined that Plaintiff

> has marked limitations in understanding, remembering, and carrying out detailed instructions, maintaining attention, concentration, and pace for extended periods, and completing a full workday without interruptions from her psychological conditions and/or treatment [and that] her conditions would impact her ability to sit, stand, and/or walk for more than an hour.

(AR 27).  The ALJ noted that the opinion was not supported by Dr. Harder's observations that Plaintiff exhibited normal cognition, affect, and social behavior; that Dr. Harder released Plaintiff to undergo gastric sleeve surgery; and his statements that Plaintiff was psychologically stable.  (AR 27).  The ALJ also pointed to other examining sources finding Plaintiff exhibiting appropriate mood, affect, cognition, memory, insight, judgment, thought processes and contents, and social behavior as inconsistent with Dr. Harder's opinion.  (AR 27).  Similarly, the ALJ found Plaintiff's activities of daily living were inconsistent with his opinion.  (AR 27).

The ALJ found state agency psychological consultants' opinions persuasive:

> [Plaintiff] has moderate limitations in the "paragraph B" criteria of interacting with others and maintaining concentration, persistence, or pace…[Plaintiff can] maintain attention and concentration sufficient to complete simple and detailed tasks in two-hour increments in a well-spaced work environment, and to interact appropriately with the two-hour increments in a well-spaced work environment, and to interact appropriately with the public and coworkers in brief non-intensive encounters….[and] is able to adapt and adjust to workplace changes in a work place environment that does not require fast-paced production quotas.

(AR 26).  The ALJ noted that these restrictions were supported by the record and consistent with Plaintiff's significant improvement through anti-depressants and ADHD medications along with her own subjective daily activities.  (AR 26).

3.      The ALJ's evaluation of Plaintiff's subjective statements.

In conducting the two-step analysis of Plaintiff's subjective statements about her symptoms, the ALJ found that Plaintiff's statements regarding her physical and mental

impairments were not sufficiently supported by the record.  (AR 22-23).  The ALJ compared

Plaintiff's statements about her physical impairments—the difficulties she expressed standing,

walking, lifting, and bending—as inconsistent with her treatment notes showing intact gait,

coordination, sensory, and motor function.  (AR 22-23).  The ALJ compared Plaintiff's

statements about her mental impairments—debilitating depression, anxiety, ADHD, PTSD, and

the difficulties those conditions caused—with treatment notes showing normal cognitive

functioning, affect, and social behavior along with improvements over time.  (AR 22-24).

### 4.    The ALJ's hypothetical to the vocational expert.

In providing a hypothetical, the ALJ asked the vocational expert to consider an individual

who "could perform simple or detailed tasks for two-hour increments.  This individual could

occasionally have public contact of a superficial nature.  And this individual could not perform

teamwork-related tasks."  (AR 76).  Using that hypothetical, the ALJ found that Plaintiff could

not perform her past work, but that she could perform jobs like mail clerk, sorter, and office

helper.  (AR 76-77).

## II.    Standard.

The court reviews administrative decisions in social security disability benefits cases

under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002).  Section

405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security

made after a hearing to which he was a party, irrespective of the amount in controversy, may

obtain a review of such decision by a civil action…brought in the district court of the United

States for the judicial district in which the plaintiff resides."  The court may enter, "upon the

pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the

decision of the Commissioner of Social Security, with or without remanding the case for a

rehearing."  *Id.*  The Ninth Circuit reviews a decision of a District Court affirming, modifying, or

reversing a decision of the Commissioner *de novo*.  *Batson v. Commissioner*, 359 F.3d 1190,

1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.

*See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the

Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record.  *Batson*, 359 F.3d at 1193.  When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

## III.    Disability evaluation process.

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995).  To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  More specifically, the individual must provide "specific medical evidence" in support of her claim for disability.  20 C.F.R. § 404.1514.  If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy.  *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  If at any step the ALJ determines that she can make a finding of disability or non-disability, a

determination will be made, and no further evaluation is required.  *See* 20 C.F.R.

§ 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Step one requires the ALJ to

determine whether the individual is engaged in substantial gainful activity ("SGA").  20 C.F.R.

§ 404.1520(b).  SGA is defined as work activity that is both substantial and gainful; it involves

doing significant physical or mental activities usually for pay or profit.  *Id*. § 404.1572(a)-(b).  If

the individual is engaged in SGA, then a finding of not disabled is made.  If the individual is not

engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that

is severe or a combination of impairments that significantly limits her from performing basic

work activities.  *Id.* § 404.1520(c).  An impairment or combination of impairments is not severe

when medical and other evidence establishes only a slight abnormality or a combination of slight

abnormalities that would have no more than a minimal effect on the individual's ability to work.

*Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28.   If the individual does not have

a severe medically determinable impairment or combination of impairments, then a finding of not

disabled is made.  If the individual has a severe medically determinable impairment or

combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or

combination of impairments meet or medically equal the criteria of an impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If

the individual's impairment or combination of impairments meet or equal the criteria of a listing

and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made.  20

C.F.R. § 404.1520(h).  If the individual's impairment or combination of impairments does not

meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds

to step four.

Before moving to step four, however, the ALJ must first determine the individual's RFC,

which is a function-by-function assessment of the individual's ability to do physical and mental

work-related activities on a sustained basis despite limitations from impairments.  *See* 20 C.F.R.

§ 404.1520(e); *see also* SSR 96-8p.  In making this finding, the ALJ must consider all the

relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; *see also* SSR 16-3p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW").  20 C.F.R. § 404.1520(f).  PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established.  In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA.  20 C.F.R. §§ 404.1560(b) and 404.1565.  If the individual has the RFC to perform her past work, then a finding of not disabled is made.  If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  If she can do other work, then a finding of not disabled is made.  Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do.  *Yuckert*, 482 U.S. at 141-42

**IV.    Analysis and findings.**

       **A.    *The ALJ appropriately evaluated the persuasiveness of Mathew's and Dr. Harder's opinion.***

New regulations apply to claims filed on or after March 27, 2017 which change the framework for how an ALJ must evaluate medical opinion evidence.  *See* SOCIAL SECURITY ADMINISTRATION, 82 FR 5844-01, REVISIONS TO RULES REGARDING THE EVALUATION OF

MEDICAL EVIDENCE (2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" REVISIONS TO RULES, 82 FR 5844-01 at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in the regulations:

> (1)   Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical findings will be.
>
> (2)   Consistency.  The more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinions or prior administrative finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well supported…and consistent with the record…but are not exactly the

same," the ALJ is required to explain how "the other most persuasive factors" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

1. The ALJ decision to find Mathew's opinion unpersuasive was supported by substantial evidence.

Plaintiff's argument that Mathew's opinion was supported by her records relies on only two pages of those records. (ECF No. 21 at 21). While those pages reference a knee radiograph, sleep study, pelvic ultrasound, and Plaintiff's reports of pain, Plaintiff does little to explain how these sources support Mathew's findings that Plaintiff is significantly physically limited. (*Id.*) (AR 599-600). To the contrary, the ALJ cited to pages of Mathew's records where she noted Plaintiff as presenting with normal gait, balance, and coordination. (AR 26) (citing AR 374 ("sensory and motor function intact"); AR 380 ("[musculoskeletal]: Denies swelling or pain or any injury"); AR 408 ("sensory and motor function; gait and coordination are all intact"); AR 411 ("sensory and motor function; gait and coordination are all intact")). The ALJ adequately explained how Mathew's opinion was not supported by Mathew's records or Plaintiff's self-reported activities as outlined below.

Plaintiff's argument that Mathew's opinion was consistent with the record also fails. The knee imaging Plaintiff references as consistent with Mathew's limitations shows "no fracture or acute osseous abnormality." (AR 561). And while Plaintiff broadly mentions that she experienced sleep apnea and had a pelvic ultrasound, she does not explain how this evidence is consistent with Mathew's findings. The ALJ, however, pointed out numerous inconsistencies, including: (1) Plaintiff's improvement after bariatric surgery and ablation therapy (AR 26); (2) Plaintiff's ability to work and independently engage in self-care, cooking, driving, and caring for her parents (AR 23, 25, 26); and (3) records demonstrating that Plaintiff presented with a normal gait and ambulation over the course of her treatment (AR 23 (citing AR 411 (Plaintiff had intact gait and coordination on October 4, 2014); AR 408 (Plaintiff had intact gait and coordination on February 14, 2015); AR 406 (Plaintiff had intact gait and coordination on June 18, 2015); AR 1059 (Plaintiff had a steady gait on April 4, 2019); AR 1061 (Plaintiff had a steady gait on October 7, 2019)).

1     Finally, Plaintiff's argument that the ALJ improperly found Dr. Pham's opinion

2  persuasive because Dr. Pham did not consider the entire record is without merit.  The Ninth

3  Circuit has recognized that there is almost always some time between a consultant's report and

4  the ALJ hearing and decision.  *See Meadows v. Saul*, 807 Fed. Appx. 643, 647 (9th Cir. 2020).

5  Plaintiff's argument that Dr. Pham's opinion cannot constitute substantial evidence because he is

6  not an examining medical source ignores both the change in the treating physician rule and the

7  ALJ's explanation that Dr. Pham's opinion was consistent with the record as a whole.  (AR 25)

8  (comparing Dr. Pham's opinions with records from May 2018 (AR 609); April 2019 (AR 1059);

9  and October 2019 (AR 1063)); *see* 20 C.F.R. § 404.1520c(a).  The ALJ's decision to find

10  Mathew's opinion unpersuasive was thus supported by substantial evidence.

2.     The ALJ's decision to find Dr. Harder's opinion unpersuasive was
11
        supported by substantial evidence.
12

13     Plaintiff's arguments that Dr. Harder's opinion was supported by his records is without

14  merit.   Plaintiff takes issue with the ALJ's explanation that Dr. Harder's opinion appears to have

15  been based "on the claimant's subjective allegations," arguing that Dr. Harder must rely on

16  subjective allegations as a psychologist.  (ECF No. 28 at 26-28).  But the ALJ did not find Dr.

17  Harder's opinion unsupported because he considered Plaintiff's subjective symptoms, but because

18  Dr. Harder's own objective notes of Plaintiff's symptoms did not support his opinion.  (AR 27).

19  The ALJ notes that Dr. Harder's clinical observations of Plaintiff noted that she was "always

20  exhibiting normal cognition, affect, and social behavior," which does not support his findings that

21  Plaintiff has marked limitations from her mental impairments.  (AR 27) (citing AR 470

22  (demonstrating appropriate dress, good insight, good judgment, appropriate affect, normal

23  thought content, good attention/concentration, etc.); AR 483 (demonstrating intact functional

24  status, appropriate affect, and interactive interpersonal skills along with Dr. Harder's impression

25  that "she cannot find a job, but is not disabled"); AR 495 (demonstrating intact functional status,

26

27

28

1   appropriate affect, and interactive interpersonal skills); AR 499 (demonstrating euthymic[3] mood,

2   intact functional status, appropriate affect, and interactive interpersonal skills); AR 511

3   (demonstrating euthymic mood, intact functional status, appropriate affect, interactive

4   interpersonal skills); AR 523 (demonstrating euthymic mood, intact functional status, appropriate

5   affect, interactive interpersonal skills, and that "she feels her meds are helping her now…started

6   training at a new job"); AR 527 (demonstrating intact functional status, appropriate affect,

7   interactive interpersonal skills)).  Dr. Harder also cleared Plaintiff for surgery, which was

8   inconsistent with his opinion.  (AR 27).  While Plaintiff argues that being cleared for surgery is

9   not the same as functioning in a work environment, the ALJ did not reach this conclusion, but

10  only found the clearance inconsistent with Dr. Harder's opinion.

11          Plaintiff's arguments that Dr. Harder's opinion was consistent with the record also

12  conflates subjective statements with objective evidence.  Plaintiff points to portions of the record

13  in which Plaintiff subjectively described her depression and anxiety symptoms to other providers.

14  (ECF No. 28 at 28).  But many of these records also indicate that Plaintiff presented with

15  appropriate mood, affect, cognition, insight, memory, cognition, judgment, thought processes and

16  contents, and social behavior.  (*Id.*) (*See e.g.*, AR 396 ("in no acute distress…[a]lert and oriented

17  x3, cooperative, answers questions appropriately"); AR 432 (demonstrating that, while Plaintiff

18  presented with anxiety, "[a]ssociations are intact, thinking is logical, and thought content appears

19  appropriate…insight into problems appears fair.  Judgement appears fair…There are no signs of

20  hyperactive or attentional difficulties.  Ms. Staton's behavior in the session was cooperative and

21  attentive with no gross behavioral abnormalities"); AR 737 (demonstrating normal appearance,

22  intact associations, logical thinking, appropriate thought content, intact memory, no signs of

23  anxiety, normal attention span, no signs of hyperactivity, intact insight and judgment)).   In others

24  that the ALJ cited, Plaintiff herself denied depression or anxiety.  (AR 446 ("[p]sychotic,

25  depressive, and anxiety symptoms are denied"); AR 449 (same); AR 610 ("Not present –

26  _____

27  [3] "Euthymia" is defined by the American Psychological Association as "a mood of well-being
    and tranquility."  *See Euthymia*, AMERICAN PSYCHOLOGICAL ASSOCIATION DICTIONARY OF

28  PSYCHOLOGY, https://dictionary.apa.org/euthymia. (last visited Jan. 24, 2022).

1  Anxiety, Depression, Fearful and Frequent crying"); AR 732 (denying anxiety, depressed mood,

2  difficulty sleeping, nervous breakdowns and presenting as "friendly, [] happy, well groomed,

3  normal weight, and relaxed and exhibits speech that is normal...")).  The ALJ also pointed to

4  Plaintiff's activities, including working, taking care of her parents, and independently maintaining

5  her activities of daily living, which were inconsistent with Dr. Harder's opinion of marked

6  limitations.  (AR 27).

7  　　　　Finally, Plaintiff argues that the ALJ improperly found state agency reviewing

8  psychologists' opinions persuasive because they did not review the entire record.  But again,

9  under the new regulations and Ninth Circuit precent, the state agency reviewing physicians are

10  not required to review the entire record to be persuasive.  Plaintiff also fails to address which

11  records post-dating the state agency psychologists' reviews she believes contradicted their

12  opinions.  The ALJ's decision to find Dr. Harder's opinion unpersuasive was thus supported by

13  substantial evidence.

14  　　　　***B.***　　　***The ALJ did not err in rejecting Plaintiff's subjective statements.***

15  　　　　An ALJ engages in a two-step analysis to determine whether a plaintiff's testimony

16  regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there

17  is objective medical evidence of an underlying impairment which could reasonably be expected to

18  produce the pain or other symptoms alleged."  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir.

19  2012) *superseded on other grounds by* 20 C.F.R. § 404.1502(a) (internal quotation marks

20  omitted).  "The claimant is not required to show that her impairment 'could reasonably be

21  expected to cause the severity of the symptom she has alleged; she need only show that it could

22  reasonably have caused some degree of the symptom.'"  *Vasquez v. Astrue*, 572 F.3d 586, 591

23  (9th Cir. 2009) (citations omitted).

24  　　　　Second, "[i]f the [plaintiff] meets the first test and there is no evidence of malingering, the

25  ALJ can only reject the [plaintiff's] testimony about the severity of the symptoms if [the ALJ]

26  gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d

27  1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are

28  insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

undermines the [plaintiff's] complaints." *Id.* Further, "[w]hile an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The Ninth Circuit recognized the clear and convincing evidence standard to be "the most demanding required in Social Security cases" and "not an easy requirement to meet." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). An ALJ's failure to provide "specific, clear and convincing reasons" for rejecting a plaintiff's pain and symptom testimony constitutes legal error that is not harmless because it precludes a court from conducting a meaningful review of the ALJ's reasoning and ensuring that the plaintiff's testimony is not rejected arbitrarily. *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

In making an adverse credibility determination, the ALJ may consider, among other factors: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

The ALJ provided clear and convincing reasons to reject Plaintiff's subjective statements about her physical and mental impairments. Plaintiff's argument about her physical impairments is conclusory, only stating that her bariatric surgery was not "conservative treatment." (ECF No. 28 at 33). The ALJ, however, outlined Plaintiff's treatment for her knee, lymphedema, and obesity from 2014 until 2019. (AR 23). Those records showed that Plaintiff had mild osteoarthritis and joint effusion, presented with intact gait and normal ambulation to her appointments, lost weight after bariatric surgery, and began receiving ablation therapy for her lymphedema. (AR 23). The ALJ thus provided clear and convincing reasons to reject Plaintiff's subjective statements about the extent of her physical impairments.

Most of Plaintiff's arguments are dedicated to her mental impairments. She argues that just because she was not hospitalized for her mental conditions does not mean that her treatment

was "conservative." (ECF No. 28 at 31-33). But the ALJ does not rely on her lack of hospitalization alone to find Plaintiff's treatment to have been "conservative." Rather, the ALJ considered Plaintiff's records spanning from November 2015 until October 2019 which demonstrated a positive response to medication, frequent notations of euthymic mood, and normal cognitive functioning, affect and social behavior. (AR 23-24). Plaintiff also contests the ALJ finding her statements that she was terrified of leaving the house and of men inconsistent with her actions in attending medical appointments with male providers. (ECF No. 28 at 33). But the ALJ did not rely on this inconsistency alone to reject Plaintiff's subjective testimony. Instead, the ALJ articulated it as one inconsistency among others in making the adverse credibility determination. The ALJ's rejection of Plaintiff's subjective testimony was thus supported by substantial evidence.

### C. The ALJ's hypothetical to the vocational expert is consistent with restrictions identified in the medical testimony.

In *Stubbs-Danielson v. Astrue*, the Ninth Circuit concluded that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). There, doctors opined that the claimant had a "slow pace, both with thinking and her actions," was "moderately limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods," could "carry out very short simple instructions," "maintain attention and concentration for extended periods," and "sustain an ordinary routine without special supervision." *Id.* at 1173 (internal quotations omitted). The ALJ concluded that "the claimant retains the residual functional capacity to perform simple, routine, repetitive sedentary work, requiring no interaction with the public." *Id.* The Ninth Circuit upheld this RFC, finding that the RFC "properly incorporated the limitations identified by [the doctors], including those related to pace and other mental limitations regarding attention, concentration, and adaption." *Id.* at 1174.

In *Brink v. Commissioner Social Sec. Admin.*, the Ninth Circuit found that an ALJ's failure to incorporate the claimant's moderate difficulty with concentration, persistence, and pace

1   in the hypothetical posed to the ALJ was error.  *See Brink v. Commissioner Social Sec. Admin.*,

2   343 Fed. Appx. 211, 212 (9th Cir. 2009).  There, the hypothetical contained only the ALJ's

3   limitation of claimant to "simple, repetitive work."  *Id.*  The Ninth Circuit noted that the ALJ did

4   not equate "simple, repetitive work," with "work requiring concentration, persistence, or pace,"

5   because the ALJ later asked the vocational expert whether a person with moderate to marked

6   attention and concentration deficits could perform the simple, repetitive work the ALJ had

7   described.  *Id.*  The vocational expert responded in the negative.  *Id.*  The Ninth Circuit

8   distinguished *Stubbs-Danielson*, finding that the ALJ's decision was in error because the

9   "medical evidence establishes, as the ALJ accepted, that [the claimant] does have difficulties with

10  concentration, persistence, or pace."  *Id.*

11        The facts at hand are more like the facts in *Stubbs-Danielson*.  Plaintiff argues that the

12  ALJ gave an improper hypothetical question to the vocational expert which concerned an

13  individual who could "perform simple or detailed tasks for two-hour increments…could

14  occasionally have public contact of a superficial nature…[and] could not perform teamwork-

15  related tasks."  (AR 76).  Plaintiff argues that this was error because the hypothetical did not

16  account for Plaintiff's moderate limitations in concentration, persistence, and maintaining pace.

17  (ECF No. 28 at 34).  But the hypothetical here is more like the ALJ's RFC in *Stubbs-Danielson*

18  because it incorporates the limitations identified by the government's state agency sources.

19  Plaintiff cites to portions of the record where those doctors analyzed Plaintiff's concentration,

20  persistence, and pace.  (ECF No. 28 at 35) (citing AR 93-94, 128-29, 144-45).  Each of those

21  doctors, when explaining in narrative form the "sustained concentration and persistence capacities

22  and/or limitations" noted that Plaintiff "is able to maintain attention and concentration sufficient

23  to complete simple and detailed tasks in 2-hr increments in a well-spaced work environment."

24  (AR 93-94, 128-29, 144-45).  The ALJ incorporated those limitations into the RFC stating that

25  "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant has a moderate

26  limitation…[and] the claimant experiences limitations in this functional domain in that she can

27  perform simple or detailed tasks for two-hour increments at a time."  (AR 21).  The ALJ then

28

incorporated the "simple or detailed tasks for two-hour increments" into the hypothetical she posed to the vocational expert.  (AR 76).

Unlike the hypothetical in *Brinks*, which did not encompass the claimant's moderate limitations in concentration, persistence, and pace, here, the ALJ's hypothetical encompasses Plaintiff's limitations.  The hypothetical was taken directly from doctors' opinions finding that Plaintiff's limitations in concentrating, persistence, and pace could be described narratively as being limited to performing simple or detailed tasks for two-hour increments.   Because the hypothetical is consistent with restrictions identified in the medical testimony, the Court will not reverse or remand on these grounds.


**IT IS THEREFORE ORDERED** that Plaintiff's motion for remand (ECF No. 27) is **denied.**

**IT IS FURTHER ORDERED** that Defendants cross motion to affirm (ECF No. 31) is **granted**.  The Clerk of Court is kindly directed to enter judgment accordingly and close this case.


DATED: January 26, 2022

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE